These cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 151335 United States v. Wilfredo Rodriguez-Rosado. Good morning, your honors. May it please the court. Assistant Federal Public Defender Vivian Marrero on behalf of Mr. Wilfredo Rodriguez. This is an appeal from the district court's order entered on November 26, 2014, where the court denied Mr. Rodriguez's motion for reduction of sentence. Sua sponte within a week of filing and outside the process delineated in the administrative directive 14-426. Before going to the merits, Mr. Rodriguez contends that his notice of appeal was timely. He had 14 days to file his notice of appeal, that is until December 10, 2014. The record reveals that Mr. Rodriguez deposited his pro se notice of appeal in the institution's office on November 9, 2014. It was received by the clerk's office of this court on December 15. The document he sent was a form for selection of counsel on appeal. The Federal Public Defender's office had sent a letter and attached the form informing Mr. Rodriguez that he had 14 days to appeal the denial of his motion for reduction of sentence. Mr. Rodriguez filled out the form, included the criminal case number, marked that he wanted on appeal that the Federal Public Defender that represented him on the 782 proceeding be appointed, and he sent it to the return address that was in the form, which is the clerk's office of this court in Boston. Excuse me, counsel, could you just get on to the merits? I mean, what I'm interested in is the issue of discretion. Yes, Your Honor. Figure out the trickiness of the timeliness of the appeal from the record, I think. Yes, Your Honor. As to the discretion, we believe that the district court abuses discretion because the record does not allow this court to draw a reasonable inference that the district court considered the 3553A factors and the policy statement. While Section 3582 grants discretion to the court, to the district judges on whether to grant the reduction and the extent of such reduction, Mr. Rodriguez believes that the decision of the district courts must be shaped by the factors set forth in 3553A and the policy statement. Sentencing proceedings are the guidelines as the initial benchmark. In a 3582 proceeding, we believe that conduct... So, counselor, the court gave as its 3553 reason that Rodriguez was the maximum leader of a compartmentalized drug trafficking organization that smuggled over 9,000 kilos of cocaine into the United States. So, in other words, in terms of weighing those factors, the court took a look at the nature of the charge and weighted more heavily than the other factors. And quite honestly, what I need you to help me figure out, because I've been troubled by a bunch of these cases, is I'm trying to figure out as an appellate judge operating from a review standard that's very deferential, I'm trying to figure out how we as a court ever make a determination that that kind of specific finding, which clearly goes to one of the factors, how we can ever find that that constitutes an improper weighing and thus an abuse of discretion. Yes, your honor, that is one of the factors of the 3553, which is the nature and circumstances of the offense. But the court in its order did not mention that it had considered anything else other than the nature and circumstances of the offense. That is why, for example, the administrative office included in the order where courts must decide whether to grant or deny the motion for reduction of sentence, it includes the specific language that the district court took into consideration, the 3553A factors and the policy statement. We believe that... Counselors, aren't you, you're really making a kind of procedural and reasonableness argument, aren't you? You never had an opportunity to submit arguments in support of the reduction, is that correct? That is correct, your honor. And the administrative procedure in place contemplates an opportunity to do that, does it not? That is correct, your honor. That is why the court gives the opportunity to the parties, the United States probation officer, as well as the government, so they can provide input in order for the district court to make the determination of whether in its discretion it would grant or deny the motion. We believe that there has to be something in the record that indicates that the court considered the 3553A factors. And while not required to address all the factors, it has to provide a statement that it did consider. It's the minimum that it should. Were there co-defendants of this individual who sought a reduction and were granted it? Yes, your honor. That's one of the other reasons that we believe that if remanded, the court may consider Mr. Rodriguez's motion for reduction of sentence. Nine of the defendants in this case, the nine, eight were granted the reduction. But doesn't the language cited by Judge Thompson at least imply why this defendant was different than the others, referring to him as the mastermind of the conspiracy? Well, your honor, that is correct. However, he was the leader. And that was already taken into consideration with the four-level enhancement that he received under the plea agreement. There are two other co-defendants that were also leaders and received leadership role enhancements that were also granted the reduction because they were eligible. So the guidelines take into consideration, as you say, the fact that he was the leader. But once the it seems that the district court is free to say that the guideline range doesn't adequately punish the defendant based upon the nature and circumstances of the case, which seemingly is what happened here. Well, your honor, in this case, Mr. Rodriguez was sentenced within the guidelines. And in the pre-sentence report and at the sentencing review that there was no factors that would warrant a variance, an upward variance from the guidelines or a departure from the guidelines. But doesn't that just mean that that particular guideline range that was existent then, from the court's perspective, represented what would have been an adequate punishment, whereas the reduction doesn't? Well, your honor, we believe that at least the court had to go through the procedures and give Mr. Rodriguez the due process in determining whether he was in fact eligible. For instance, Mr. Rodriguez was not able to provide to the court his post-sentencing rehabilitation, which is one of the factors that the court may consider. It doesn't have to consider it, but it's included in the policy statement. So that's one of the things that he wasn't able to show the court, which we believe that it is very important. Counsel, would it be appropriate for us to take the view that in light of what the district court did say about why it refused to grant the reduction that even if you had an opportunity to make your arguments, it wouldn't make any difference? The district court had a view of the role of your client, and as Judge Thompson is suggesting, the court concluded that the original guideline sentence was appropriate and no matter what you said wasn't going to make any difference. Is that an appropriate view for us to take of this case and its posture? We submit that it isn't, your honor. We're not 100% sure that the district court would have granted the same sentence. Mr. Rodriguez's motion was the first one that was denied to a sponsor within a week of filing, and after it was denied, other defendants that were similarly situated were provided with all the information, there might be a possibility that it wouldn't consider it and grant the motion for reduction of sentence. When a judge accepts the make-believe agreement that's been made between the parties of 15 to 50 kilograms, when really we're talking about 9,000 kilograms, it's one thing to keep the trains moving and do some rough justice at the beginning, but now we're asking the judge to close his eyes again and pretend that it really was 15 to 50. And so I just want to repeat Judge Lopez's question. Do we really think there's any chance that there would be a difference made if we remanded? We believe that would, your honor. Two of the defendants that were eligible were adjudicated with larger quantities of drugs than Mr. Rodriguez. And did they get the reductions? Yes, your honor. They got the reductions. Same judge? Different judge? I can't remember. Same judge, your honor. It was just after Mr. Rodriguez's motion was spontaneously denied. Okay, good. Thank you. I'm sorry, and did the same judge, is the same judge involved in the sentencing of all of the other nine? Yes, your honor. Okay. Thank you, your honor. Good morning, your honors. May it please the court, my name is Maenen Schwartz, representing the U.S. Attorney's Office. First, the government urges this court to find that the defendant did not satisfy the requirements of Rule 3 and Rule 4. This court has said that following those is mandatory when it's raised by the government. And in this case, the defendant simply did not file anything within even the maximum extended legal time. It wasn't actually extended, but if it were, he still didn't file anything within that time period that gave either this court or the government notice that he intended to appeal the denial of his 782. Nonetheless, based on your honor's questions, I'll proceed unless you have questions about the timeliness to the merits of the 782 denial. In denying the 782, the government's position is that the court was restating its finding that the initial sentence was reasonable. And that sentence, as your honors pointed out, was the result of a very beneficial plea agreement. Why should the defendant have the benefit of at least being given the opportunity to take advantage of the procedural guidelines that were set forth in this jurisdiction for having these sentence reductions reviewed? I mean, he wasn't even given a shot to make his arguments. Your honor, one, he of course had the opportunity to file the motion, but number two, the administrative directive itself says very clearly, and I'm going to quote from it, nothing set forth in this directive is intended to confer individual rights to litigants nor limit the discretion of judicial officers. But that doesn't mean we can't think that it That's true, your honor. But the government's position is that the administrative directive itself, although it sets forth procedures to expedite processing of what was anticipated to be and was in fact a large number of these appeals, shouldn't create anything approaching constitutional due process rights. Well, it doesn't give them a right to get a sentence reduction, but why doesn't it at least, I mean, the purpose, clearly there's policy reasons for the sentence reduction, including reduction of the prison population, elimination of unduly long sentences. So this person has been deprived of any opportunity to at least have a shot at pleading his case. Your honor, that policy consideration simply doesn't have the same force in a situation like this where the defendant received such a beneficial plea agreement as your honors pointed out. In this case, there's every reason to believe that the agreement to less than 50 kilograms of cocaine. Well, what about the co-defendants who play it down with the same amount of stipulated drugs? Is he so dissimilarly situated from the co-defendants that this position makes sense? Yes, your honor. And I believe not only does it make sense from the record as a whole, but it makes sense given that the judge's stated reason. He said he was the maximum leader, which is a way of expressing this defendant was different from all of the other defendants. He was the leader. He was the organizer. He was the one who recruited other people at American Airlines who were employed individuals with jobs to become part of this conspiracy. And that conspiracy, he was also in the PSR, it explains he was the one with the knew who wanted to ship these kilos to the continental United States. So he had a role that was dissimilar from the other defendants. He was not, in fact, similarly situated. And the court recognized that when it denied the 782. So you're really urging a kind of harmless error analysis, aren't you? I mean, you don't argue that, I mean, there was really a complete disregard of the administrative order here by the judge, isn't that so? There was, your honor. Okay. And so, but your position is that's a harmless error because even if there had been full compliance with the order, it would not have made any difference. The judge would have done the same thing. That is an alternative argument. I do want to be clear that we do not take the position that the administrative directive created any rights in the defendant such that it was error to disregard them. The government submits that that is still within the discretion of the court to decide not to waste the resources of the government in submitting unnecessary. Excuse me, your position is that the court has the discretion to disregard the administrative order? Yes. And I believe the administrative directive itself anticipates that when it does nothing in this court has the discretion to deny that motion at the moment that it's filed. The administrative directive doesn't change that. In the alternative, were this court to find that it is error to disregard the administrative directive, we believe in this instance it was harmless and that the judge made that clear with his reasoning. What was the procedure before the magistrate judge? Did it comply with the administrative directive? Or put another way, a lot of those were handled sort of with a team approach, right? An AUSA, a defender, probation officer, and is that how most of them were handled? Correct. Like over a thousand of them were handled that way, I think. Quite a lot. And did that happen in this case? What happened in front of the magistrate judge? My understanding is it did not happen in this case. The magistrate judge did later enter a report and recommendation, but that was well after the denial. But what was that based on? Just a motion that got referred to the magistrate judge without the team approach? So the way that these have been handled is the magistrate judge is simply making a finding of eligibility and it's not necessarily informed by anything other than looking at the have it a sentence based on the drug table sentencing guidelines, was there no murder cross-reference, that sort of thing. When does the, in a typical case, when did the team come into play? After a magistrate judge's determination or before? My understanding is it is after. So generally the report and recommendation of the magistrate judge is sort of a threshold determination. And then what happens? The district court has to issue an order? No, as just a matter of course, the probation office, the defense counsel, and the... After the recommendation gets issued. So that's the piece I'm missing here. How did this one end up, this is, I'm talking about the magistrate's recommendation, went directly to the court? It is filed. The report and recommendation is a threshold determination of possible eligibility, just so that it knocks out the ones that clearly aren't eligible. But as a practical matter, that kicks in this other review by, okay, but that didn't happen here because? It had already been denied and so it was moved. And I think the judge was signaling that it wasn't going to matter what probation recommended, what the government recommended. Didn't the, despite the quick denial by the district court, the determination after the initial denial, isn't that correct? Correct, your honor. I should be clear that the magistrate judge's report and recommendation in these cases simply says that a defendant may be eligible. It's not any sort of a final determination. How do the parties know to get the team kicked into gear? Is that when they get their service copy of the report and recommendation? Or does something happen in the district court that kicks that off after the report and The time period I'm focusing on now is the February, you know, after the report is issued. That was sort of summarily rejected by the district court. And I'm trying to understand why, why didn't something else happen at that point? So it has been the consistent position of the government that persons in Mr. Rodriguez's position, we do not support a 782 reduction. We have opposed all of the But the judge wouldn't have, wouldn't have known that. That, I think that policy has become clear in just the sheer number of ones that we've had to oppose. So that being said, I'm so sorry, I have, I've lost the train of your question. Your question is why didn't something else happen after the magistrate judge's report and recommendation? Yes. Well, the court had already denied the motion. So I couldn't figure out how, once the court had denied it, it nonetheless went through the process so that there was a recommendation from the magistrate judge in spite of the fact that it was moved at that point. I think the point is that it's sort of a separate arm that the magistrate judge is just churning through all the motions that have been filed and didn't check the docket in this case to see that it had already been denied is my supposition. There's no record support for that. But it is a process that sort of runs on its own. Are you, are you in a position to say that what happened here, I understand the reference to a thousand of these and I don't at all dismiss the significance of the volume of these guideline reductions that you had to deal with, but this was highly irregular, was it not, in terms of the way the other requests for sentence reductions were handled? Your Honor, I see my time is up. May I respond? Please. Our, it is unusual that it was denied so quickly, but we submit that that simply reflects the judge's knowledge of this case and his certitude that this defendant did not merit a reduction under Amendment 782, his strong feeling about that. Ms. Schwartz, I just have a couple of other questions because we've had probably more than any of the other districts, we've had a host of appeals from the District of Puerto Rico on these sentence reduction denials and I've been, I've been at a loss trying to figure out how to make heads or tails of them, you know, understanding that it's a broad abuse of discretion standard. I've been trying to, could you, could you enlighten me, you started saying what the government's position is here, so could you just explain to me while I have you before me, how is it that you recommend some be granted and some be denied? I'm, so you're asking about the government? Generally, yeah, I'm looking for the policy. Sure, so there are a couple of considerations that cross the different cases. One is leaders, people who recruited other people specifically into the conspiracy that, that is taken very seriously, and the other is the possession or, excuse me, of weapons, of weapons, exactly, and so in cases like that, because those are policy considerations that are very important to the District of Puerto Rico, those cases generally we have opposed any further reduction, recognizing that the plea agreements are generally tailored to the amount of jail time that we think is appropriate for those cases, and so regardless of the change in the guidelines, that doesn't change the assessment of the prison sentence that the government recommends. So in other words, even though, even though the guidelines originally and as amended would necessarily take into consideration leadership role as well as the quantity of the drugs, you're sort of working backwards when you, when you're facing these sentence reduction motions because from the government's perspective here in the District of Puerto Rico, your office in conjunction with the defense attorney has already come up with what everyone thinks is the appropriate amount of jail time given the total circumstances surrounding a particular offense. Correct, your honor. Notwithstanding. That's the policy behind, the policy consideration behind the plea agreements as well. It's frequently the practice that the recommendation for the drugs that the defendant will plead to is the result of working backwards from the amount of jail time that both sides can agree on. So how does that differ, do you mind? Yeah. So I mean, so how does that differ from the other defendants who are not leaders or big gun possessors? Because my assumption is that those same factors would be taken into consideration for all of the defendants who are negotiating pleas with you, that you come up with what you think is the appropriate amount of sentence time. So I'm having a difficult time trying to figure out how that thinking factors into giving some a break and others not. Correct, your honor. So I think though the way to reconcile that is that it's really the two together and that in persons who don't possess weapons and who aren't leaders of the conspiracy that the U.S. Attorney's Office, notwithstanding the agreed upon prison sentence, is trying then to honor the policy considerations behind Amendment 782. And as your honor mentioned, those considerations include overcrowding, lengthy prison sentences. And so there's a class of defendants where the promotion of those goals is more acceptable. And those are the non-leaders and the non-weapons possessors. And then back to the case at hand, you're saying that what we have here is a situation where we have the maximum conspiracy leader. Yes, your honor. The conspiracy actually lasted, I believe the indictment charges that it began around 1999. This defendant wasn't arrested until 2009. The judge mentions the 9,000 kilos because that was charged in the indictment, but the details show it could have been far more than that. It was several hundred kilos per flight out, up to two flights a day, several suitcases, and again the recruitment of other people. It just was a massive, massive operation. And just one last question. Is it fair to say that the policy that you represented to us being the policy of the government here, that the district court is well aware of that? I cannot personally make a representation as to what has been expressed to the district court, but I think it's safe to say that the U.S. Attorney's Office has been consistent in its recommendations. So to the extent that that policy, which I don't believe is a formal or written policy, and I apologize if I represented it otherwise, but I think the United States' consistent position is clear to the district courts here. Yes, thank you.